**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )      25-cr 26-cr-04-JL-TSM-01 |
| | ) |
| MELISSA LONGE | ) |

## PLEA AGREEMENT

Pursuant to Rules 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the

United States of America by its attorney, Erin Creegan, United States Attorney for the District of

New Hampshire, and the defendant, Melissa Longe, and the defendant's attorney, Robert S.

Carey, Esquire, enter into the following Plea Agreement:

1.    The Plea and the Offense.

The defendant agrees to waive her right to have this matter presented to a grand jury and

plead guilty to an Information charging her with Conspiracy to Straw Purchase Firearms, in

violation of 18 U.S.C. §§ 932(b)(2); Conspiracy to Traffic Firearms, in violation of 18 U.S.C. §§

933(a)(1) and (3), and Sale of a Firearm in Furtherance of a Felony, in violation of 18 U.S.C. §

922(d)(10).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing

stipulations identified in Section 6 of this agreement.

2.    The Statute and Elements of the Offense.

Title 18, United States Code, Section 932(b) provides, in pertinent part:

It shall be unlawful for any person to knowingly purchase, or conspire to
purchase, any firearm in or otherwise affecting interstate or foreign commerce for,
on behalf of, or at the request or demand of any other person, knowing or having
reasonable cause to believe that such other person intends to use, carry, possess,
or sell or otherwise dispose of the firearm in furtherance of a felony.

US ATTORNEY'S OFFICE NH
JAN 21 2026 AM11:00

18 U.S.C. §§ 932(b)(2).

The defendant understands that conspiracy has the following elements, each of which the

United States would be required to prove beyond a reasonable doubt at trial:

First, that the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to straw purchase firearms; and

Second, that the defendant willfully joined in that agreement.

*Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine Internet Site Edition, 2024 Revisions,* Instructions 4.18.371(1), available at https://www.med.uscourts.gov/sites/med/files/crpjiLinks.pdf.

The defendant understands that the substantive offense of straw purchasing of firearms

has the following elements:

First, the defendant knowingly purchased a firearm;

Second, the purchase of the firearm was in or otherwise affecting interstate commerce;

Third, the purchase of the firearms was made on behalf of, or at the request or demand of another person; and

Fourth, the defendant knew or had reasonable cause to believe that the person she was purchasing the firearm for intended to sell or otherwise dispose of the firearm in furtherance of a felony.

18 U.S.C. §§ 932(b)(2).

Title 18, United States Code, Section 933(a) provides, in pertinent part:

It shall be unlawful for any person to ship, transport, transfer, cause to be transported, or otherwise dispose of any firearm to another person in or otherwise affecting interstate or foreign commerce, if such person knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony (as defined in section 932(a)); or attempt or conspire to commit [this conduct].

18 U.S.C. §§ 933(a)(1) and (3).

The defendant understands that conspiracy has the following elements, each of which the

United States would be required to prove beyond a reasonable doubt at trial:

First, that the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to commit firearms trafficking; and

Second, that the defendant willfully joined in that agreement.

*Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine Internet Site Edition, 2024 Revisions,* Instructions 4.18.371(1), available at https://www.med.uscourts.gov/sites/med/files/crpjiLinks.pdf.

The defendant understands that the substantive offense of firearms trafficking has the

following elements, each of which the United States would be required to prove beyond a

reasonable doubt at trial:

First, that the defendant knowingly shipped, transported, transferred, caused to be transported or otherwise disposed of a firearm to another person;

Second, that the shipping, transporting, transferring, causing to be transported or disposition of the firearm was in or otherwise affecting interstate commerce; and

Third, that the defendant knew or had reasonable cause to believe the use, carrying, or possession of the firearm by the recipient would constitute a felony.

18 U.S.C. § 933(a)(1).

Title 18, United States Code, Section 18 U.S.C. § 922(d)(10) provides, in pertinent part:

It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person, including as a juvenile, intends to sell or otherwise dispose of the firearm or ammunition in furtherance of a felony, a Federal crime of terrorism, or a drug trafficking offense (such as terms are defined in 18 U.S.C. § 932(a)).

18 U.S.C. § 922(d)(10).

The defendant understands that the offense has the following elements, each of which the

United States would be required to prove beyond a reasonable doubt at trial:

First, the defendant knowingly sold or otherwise disposed of a firearm described in the indictment at or about the time alleged;

Second, the firearm's buyer intended to sell or otherwise dispose of the firearm to another person in furtherance of a felony, a Federal crime of terrorism, or a drug trafficking offense (as such terms are defined in 18 U.S.C. § 932(a)); and

Third, the defendant knew or had reasonable cause to believe that the buyer intended to sell or otherwise dispose of the firearm in furtherance of a felony, a Federal crime of terrorism, or a drug trafficking offense.

18 U.S.C. § 922(d)(10).

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government would introduce evidence of the following facts, which would prove the elements of the offenses beyond a reasonable doubt:

The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), Homeland Security Investigations (HSI), and the U.S. Department of Commerce's Bureau of Industry and Security (BIS) are leading an investigation into a transnational criminal organization involved in international firearms smuggling originating in New Hampshire. ATF and HSI have been assisted, throughout this investigation, by various agencies including Customs and Border Protection (CBP), Ontario Provincial Police (OPP), Saint Regis Mohawk Tribal Police (SRMTP), Akwesasne Mohawk Police Service (AMPS), and Sûreté du Québec. To date, ATF and HSI have identified more than forty firearms that have been straw purchased in New Hampshire and trafficked through Vermont and into New York State and/or Canada. The criminal organization traffics firearms through various Mohawk reservations with the ultimate destination ending in Canada.

These firearms have been recovered at various Canadian crime scenes in the hands of members or suspected members of organized crime. At one of the crime scenes, on or about August 30, 2024, a Glock Pistol GMBH Model 26, was found by the Montreal City Police Department in Montreal, Quebec, as part of a search warrant executed on a residence in relation to a kidnapping investigation. The serial number was obliterated but restored successfully and

shown to be BRZH077. This firearm was purchased by a co-defendant, Dustin Tuttle, at American Trikes & Motorsports in Keene, New Hampshire, on or about October 20, 2023.

The defendant, Melissa Longe, purchased six (6) firearms that were recovered as part of various criminal investigations in Canada.

One firearm, a Glock Model 28, .380 caliber semi-automatic pistol with serial number AHSR021, was recovered on January 16, 2025, as part of a criminal search warrant in Montreal, Quebec, Canada. That firearm was purchased by the defendant, Melissa Longe on or about October 19, 2023, from Black Op Arms in Claremont, New Hampshire.

A second firearm, Smith & Wesson M&P Bodyguard 38, .38 Spl caliber revolver, with serial number CVW3838, was found discarded in a snowbank in Montreal, Quebec, Canada on or about December 30, 2024. That firearm was purchased by the defendant, Melissa Longe from American Trikes and Motorsports in Keene, New Hampshire, on or about September 28, 2023.

A third firearm, a FN Five-Seven, 5.7x28mm caliber semi-automatic pistole, with serial number 386423404, was recovered on or about December 18, 2024, as part of a criminal search warrant in Montreal, Quebec, Canada. That firearm had an obliterated serial number, but it was restored by the Laboratoire de Sciences judiciaires et de medicine legale (LSJML). It was purchased by the defendant, Melissa Longe, from Sporting and Hunting Depot, LLC, in Charlestown, New Hampshire on or about November 1, 2023.

A fourth firearm, a Glock Model 43, 9x19mm caliber semi-automatic pistol, with serial number AHLT557, was recovered during an abduction investigation on or about April 24, 2024, in Saguenay, Quebec, Canada. A fifth firearm, a Glock Model 19M, 9x19mm caliber semi-automatic pistol, with serial number AHVY161, was recovered on April 18, 2024, as part of the same abduction investigation in Saguenay, Quebec, Canada. Both firearms contained serial

numbers that were obliterated but successfully restored by LSJML. Both firearms were purchased by the defendant, Melissa Longe, on or about October 19, 2023, from Black Op Arms in Claremont, New Hampshire.

Finally, the sixth firearm, a S.C. Nova Draco NAK-9, 9x19mm caliber semi-automatic pistol, with serial number RON22245780, was recovered on or about February 28, 2024, as part of a criminal investigation in La Baie, Quebec, Canada. It was purchased by the defendant, Melissa Longe, on or about September 28, 2023, from American Trike and Motorsports, in Keene, New Hampshire.

Throughout the investigation, ATF agents have reviewed ATF forms 4473 and other firearm transactions records from the following federal firearms licensees (FFL): Black Op Arms, American Trikes & Motorsports, and Trader Johns Gun Shop LLC. Each of these FFLs are located within the State of New Hampshire. These records show the following:

On or about October 19, 2023, a co-defendant, Dustin Tuttle, purchased (1) a Glock, 17, 9mm, pistol, serial number (SN): BSHS739; (2) a Zastava, ZPAP 92, 7.62mm, pistol, SN: Z92-101899; and (3) a Tisas-Trabzon Gun Industry Corp, .45 cal, Pistol, SN: T0620-23Z13537, from the FFL Black Op Arms.

On or about October 20, 2023, a co-defendant, Dustin Tuttle, purchased a Glock 26, 9mm, piston, SN: BRZH077 from American Trikes & Motorsports.

On or about October 31, 2023, a co-defendant, Dustin Tuttle, purchased (1) a Smith & Wesson, Bodyguard, .380 cal, pistol, SN: KJH3188; and (2) a Colt Canada, MKIV, .45 cal, pistol, SN: RRD1226, from Trader Johns Gun Shop LLC.

On or about June 23, 2022, a co-defendant, Dustin Tuttle, purchased a SAR 9, 9mm pistol, SN: T11102-21BV95039, from American Trikes & Motorsports.

Finally, on or about December 16, 2022, a co-defendant, Dustin Tuttle, purchased a Colt, M1911A1, .45cal., pistol, SN: 2799591.

Two of these firearms were recovered at crime scenes in Canada by Canadian law enforcement agencies. In addition to the Glock 26 with serial number BZH077 recovered on or about May 8, 2024, in Montreal, Quebec, Canada, the Glock 17 with serial number BSHS739 was recovered on or about November 27, 2024, in Chandley, Quebec, Canada.

Throughout the investigation, ATF and HSI have conducted multiple interviews of individuals involved in the firearm trafficking organization, to include the defendant, Melissa Longe. The defendant admitted to purchasing the firearms for the purpose of selling them to members of the Awkesasne Mohawk Indian Reservation (AMIR) located in New York. The defendant stated that she was asked, and agreed, to conduct the straw purchases by Individual 1. The defendant further explained that, on at least nine (9) occasions during the time of the conspiracy, the members of AMIR came to Individual 1's house in Vermont with cash to purchase the firearms illegally. The defendant admitted that she knew the members of AMIR were from New York. The members of AMIR would provide her with cash and a list of guns to purchase. Individual 1 would then drive the defendant to various federal firearm licensees (FFL) where the defendant would purchase the firearms. The defendant would sometimes write the list on her hand or have in on her phone. Other times, the defendant would have Individual 1 present with her to help identify the firearms she was to straw purchase. After purchasing the firearms, the defendant and Individual 1 would return to Individual 1's house where they would give the firearms to members from AMIR. The defendant stated that she and Individual 1 would receive $100 in United States Currency for each firearm that was straw purchased.

The defendant further stated that, when she purchased guns from American Trikes and Motorsports, Individual 1 always entered the store and sometimes handled the firearms to be purchased. The defendant further stated that, on or about late March or early April of 2024, one of the members from the AMIR that went by the moniker "Mike Jones," came to Vermont with approximately $6,000 United States Currency. He asked for the defendant and Individual 1 to purchase as many firearms as they could. The defendant and Individual 1 then went to American Trikes and Motorsports in Keene, New Hampshire to attempt to make the purchase but they were told by an employee that the background system was down. The defendant and Individual 1 then proceeded to leave the store when the owner, Individual 2, pulled Individual 1 aside to speak with him privately. The defendant left the store and went to Individual 1's vehicle and found a note on the windshield that said, "ATF is Watching U." The defendant saved the note and put it in her wallet. During the time of defendant's interview with ATF agents, she voluntarily gave it to ATF agents. The defendant stated that the note made her quit straw purchasing because she was worried. The defendant admitted to acting with two other co-conspirators, Dustin Tuttle and Individual 1, both of whom were involved in purchasing firearms in furtherance of the firearms trafficking conspiracy.

ATF learned, through other investigative efforts including review of multiple sales reports, ATF Form 4473s, and interviews of other co-conspirators cooperating with the government, that the following firearms were purchased by the defendant, Melissa Longe, as part of the trafficking scheme.

| DATE | FFL | FIREARM |
|---|---|---|
| 9/11/2023 | Trader Johns Gun Shop | 1. Ruger, P95DC, 9mm, pistol, SN: 312-05894 |

| | | |
|---|---|---|
| | | 2. Smith & Wesson, M&P Bodyguard 380, .380 cal., pistol, SN:  EAJ9664 |
| | | 3. Para-Ordnance MFG, LDA Carry, .45 cal., pistol, SN:  P110362 |
| | | 4. Century Arms, VSKA, 7.62 cal., SN: SV7132666 |
| 9/27/2023 | Trader Johns Gun Shop | 1. Glock, 27, .40 cal., pistol, SN:  BYGL709 |
| | | 2. Bersa, Thunder 380, .380 cal., pistol, SN:  B04829 |
| 9/27/2023 (1-5)<br><br><br><br><br><br><br><br><br>9/28/2023 (6-11) | American Trikes & Motorsports | 1. Glock, 30, .45 cal., pistol, SN:  BYNU502 |
| | | 2. Armscor of the Philippines (Squires Bingham), 1911A1, .45 cal., pistol, SN:  RIA2484540 |
| | | 3. Kahr Arms – Auto Ordnance, 1911A1, .45 cal., pistol, SN:  A0A47123 |
| | | 4. American Tactical Imports – ATI, FXH-45, .45 cal., pistol, SN:  FX004143 |
| | | 5. S.C. Nova Grup S.R.L., Draco 9S, 9mm, pistol, SN:  RON2245780 |
| | | 6. Taurus, 605, .357 cal., revolver, SN: AED308147 |
| | | 7. Taurus, 905, 9mm, revolver, SN:  ADG498658 |
| | | 8. Taurus, 856, .38 cal., revolver, SN:  ADG540196 |
| | | 9. Charter Arms Shelton, CT (Charter 2000), Shamrock, .38 cal., revolver, SN:  22L27500 |
| | | 10. Magnum Research, Inc., Desert Eagle, .44 cal., pistol, SN:  DK0099777 |
| | | 11. Smith & Wesson, Bodyguard, .38 cal., revolver, SN:  CVW3838 |

| | | |
|---|---|---|
| 10/19/2023 | Black OP Arms, LLC | 1. Glock, 43, 9mm, pistol, SN: AHLT557<br><br>2. Glock, G19M, 9mm, pistol, SN: AHVY161<br><br>3. Glock, 28, .380 cal, pistol, SN: AHSR021 |
| 11/1/2023 | Sporting & Hunting Depot LLC | 1. Glock, 21, Gen4, .45 cal., pistol, SN: AGSK34<br><br>2. FN. (FN Herstal), Five-seven, 5.7 cal., pistol, SN: 386423404 |
| 1/26/2024 | American Trikes & Motorsports | 1. Ruger, American Pistol, 9mm, pistol, SN: 860-98887<br><br>2. Glock, 34, 9mm, pistol, SN: GYF545<br><br>3. Glock, 48, 9mm, pistol, SN: BXCX395 |
| 2/1/2024 | American Trikes & Motorsports | 1. German Sports Guns, Firefly, .22 cal., pistol, SN: F515955<br><br>2. SCCY Industries, DVG-1, 9mm, pistol, SN: D005325<br><br>3. Taurus, G2C, 9mm, pistol, SN: TLN51887<br><br>4. Ruger, Security-9, 9mm, pistol, SN: 382-00414 |
| 2/1/2024 | Trader Johns Gun Shop LLC | 1. Mossberg, MC2C, 9mm, pistol, SN: 026699MC<br><br>2. Smith & Wesson, SD9, 9mm, pistol, SN: EFC5821<br><br>3. Canik, TP-9SF, 9mm, pistol, SN: 22AT19109 |
| 2/7/2024 | Monadnock Firearms | 1. Taurus, G2C, 9mm, pistol, SN: 1C113115 |
| 2/23/2024 | American Trikes & Motorsports | 1. Canik, Mete, 9mm, pistol, SN: T6472-21CC19757<br><br>2. Taurus, G2C, 9mm, pistol, SN: AEB081573 |

| | | 3. Bersa, BP9CC, 9mm, pistol, SN: M46476 |
|---|---|---|

The defendant further admitted that she knew it was a felony to lie on the ATF Form 4473 and that she did lie when filling out the ATF Form 4473 for the purchases during the course of the conspiracy. Specifically, she lied when she answered question 11a on the ATF Form 4473 which states: "Are you the actual buyer of the firearm(s) listed on this form? Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you." The defendant answered "yes" indicating that she was the actual buyer of the firearms she purchased even though she knew that this was a lie because she was straw purchasing them for the New York members of AMIR.

To date, ATF and Canadian law enforcement have recovered eight (8) firearms at various crime scenes in Canada that were purchased by the defendant and other known co-conspirators involved in the international firearm trafficking organization. Additionally, one (1) firearm was recovered at a crime scene in New York and one (1) firearm was recovered at a crime scene in Connecticut.

4. Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offense are:

A. A maximum prison term of 25 years for Count 1 (18 U.S.C. § 932(b)(2)); 15 years for Count 2 (18 U.S.C. § 933(a)(1)); and 10 years for Count 3 (18 U.S.C. § 922(d)(10);

B. A maximum fine of $250,000 (18 U.S.C. § 3571);

C. A term of supervised release of not more than 5 years for Count 1, and not more than 3 years for Counts 2 and 3 (18 U.S.C. § 3583). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release; and

D.      A mandatory special assessment of $100 for each count of conviction, at or before the time of sentencing (18 U.S.C. § 3013(a)(2)(A)); and

E.      In addition to the other penalties provided by law, the Court may order the defendant to pay restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

To facilitate the payment and collection of any restitution that may be ordered, the defendant agrees that, upon request, she will provide the United States with a financial disclosure statement and supporting financial documentation.

The defendant further agrees that, if restitution is ordered, it shall be due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce.the judgment in full, including, but not limited to, the Treasury Offset Program.

5.  <u>Sentencing and Application of the Sentencing Guidelines.</u>

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that she has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or her sentence is other than she anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A.      Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.      Respond to questions from the Court;

C.      Correct any inaccuracies in the pre-sentence report;

D.      Respond to any statements made by her or her counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address

the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that she may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. Sentencing Stipulations and Agreements.

Pursuant to Fed. R. Crim. 11(c)(1)(B), the United States and the defendant stipulate and agree to the following:

(a)    The United States will recommend that the defendant be sentenced at the bottom of the applicable advisory sentencing guidelines range as determined by the Court; and

(b)    the total amount of firearms trafficked by the defendant and her co-conspirators for purposes of the United States Sentencing Guidelines is forty-four (44) firearms.

The defendant understands that the Court is not bound by the foregoing agreements and, with the aid of a pre-sentence report, the Court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept any or all of those agreements, such rejection by the Court will not be a basis for the defendant to withdraw her guilty plea.

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this case, and she is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other

penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7. Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.    Fails to admit a complete factual basis for the plea at the time she is sentenced or at any other time;

B.    Challenges the United States' offer of proof at any time after the plea is entered;

C.    Denies involvement in the offense;

D.    Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.    Fails to give complete and accurate information about her financial status to the Probation Office;

F.    Obstructs or attempts to obstruct justice, prior to sentencing;

G.    Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.    Fails to appear in court as required;

I.    After signing this Plea Agreement, engages in additional criminal conduct; or

J.    Attempts to withdraw her guilty plea.

The defendant understands and agrees that she may not withdraw her guilty plea if, for any of the reasons listed above, the United States does not recommend that she receive a reduction in her sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that she has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and she has assisted the United States in the investigation or prosecution of her own misconduct by timely notifying the United States of her intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8. <u>Waiver of Trial Rights and Consequences of Plea.</u>

The defendant understands that she has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent her. The defendant also understands that she has the right:

A.    To plead not guilty or to maintain that plea if it has already been made;

B.    To be tried by a jury and, at that trial, to the assistance of counsel;

C.    To confront and cross-examine witnesses;

D.    Not to be compelled to provide testimony that may incriminate her; and

E.    To compulsory process for the attendance of witnesses to testify in her defense.

The defendant understands and agrees that by pleading guilty she waives and gives up the foregoing rights and that upon the Court's acceptance of her guilty plea, she will not be entitled to a trial.

The defendant understands that if she pleads guilty, the Court may ask her questions about the offense, and if she answers those questions falsely under oath, on the record, and in the presence of counsel, her answers will be used against her in a prosecution for perjury or making false statements.

9. Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that she:

A. Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because she is guilty;

B. Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C. Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D. Understands the nature of the offense to which she is pleading guilty, including the penalties provided by law; and

E. Is completely satisfied with the representation and advice received from her undersigned attorney.

10. Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to her about any civil or administrative consequences that may result from her guilty plea. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11. Collateral Consequences.

The defendant understands that as a consequence of her guilty plea she will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights,

such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if she is not a citizen of the United States, her guilty plea to the charged offense will likely result in her being subject to immigration proceedings and removed from the United States by making her deportable, excludable, or inadmissible. The defendant also understands that if she is a naturalized citizen, her guilty plea may result in ending her naturalization, which would likely subject her to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause her removal from the United States. The defendant understands that she is bound by her guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to her guilty plea and to her sentence based on any immigration consequences and agrees not to seek to withdraw her guilty plea, or to file a direct appeal or any kind of collateral attack challenging her guilty plea, conviction, or sentence, based on any immigration consequences of her guilty plea.

12. <u>Satisfaction of Federal Criminal Liability; Breach</u>.

The defendant's guilty plea, if accepted by the Court, will satisfy her federal criminal liability in the District of New Hampshire arising from her participation in the conduct that forms the basis of the information in this case.

The defendant understands and agrees that, if after entering this Agreement, she fails specifically to perform or fulfill completely each one of her obligations under this Agreement, fails to appear for sentencing, or engages in any criminal activity prior to sentencing, she will have breached this Agreement.

If the United States, in its sole discretion, and acting in good faith, determines that the defendant committed or attempted to commit any further crimes, failed to appear for sentencing, or has otherwise violated any provision of this Agreement, the United States will be released from its obligations under this Agreement, including, but not limited to, any agreement it made to dismiss charges, forbear prosecution of other crimes, or recommend a specific sentence or a sentence within a specified range. The defendant also understands that she may not use her breach of this Agreement as a reason to withdraw her guilty plea or as a basis to be released from her guilty plea.

13. Forfeiture

The defendant agrees to immediately and voluntarily forfeit to the United States her interest, if any, in any and all assets subject to forfeiture pursuant to 18 U.S.C. §§ 924(d), 934 and 28 U.S.C. § 2461(c), as a result of her guilty plea, including, but not limited to: (1) a Glock, 17, 9mm, pistol, serial number BSHS739; (2) a Zastava, ZPAP 92, 7.62mm, pistol, serial number Z92-101899; (3) a Tisas- Trabzon Gun Industry Corp, .45 cal, Pistol, serial number T0620-23Z13537; (4) a Glock 26, 9mm, piston, serial number BRZH077; (5) a Smith & Wesson, Bodyguard, .380 cal, pistol, serial number KJH3188; (6) a Colt MKIV, .45 cal, pistol, serial number RRD1226; (7) a Ruger, P95DC, 9mm, pistol, serial number 312-05894; (8) a Smith & Wesson, M&P Bodyguard 380, .380 cal., pistol, serial number EAJ9664; (9) a Para-Ordnance MFG, LDA Carry, .45 cal., pistol, serial number P110362; (10) a Century Arms, VSKA, 7.62 cal., serial number SV7132666; (11) a Glock, 27, .40 cal., pistol, serial number BYGL709; (12) a Bersa, Thunder 380, .380 cal., pistol, serial number B04829; (13) a Glock, 30, .45 cal., pistol, serial number BYNU502; (14) an Armscor of the Philippines (Squires Bingham), 1911A1, .45 cal., pistol, serial number RIA2484540; (15) a Kahr Arms – Auto Ordinance, 1911A1, .45 cal.,

pistol, serial number A0A47123; (16) a American Tactical Imports – ATI, FXH-45, .45 cal., pistol, serial number FX004143; (17) a S.C. Nova Grup S.R.L., Draco 9S, 9mm, pistol, serial number RON2245780; (18) a Taurus, 605, .357 cal., revolver, serial number AED308147; (19) a Taurus, 905, 9mm, revolver, serial number ADG498658; (20) a Taurus, 856, .38 cal., revolver, serial number ADG540196; (21) a Charter Arms Shelton, CT (Charter 2000), Shamrock, .38 cal., revolver, serial number 22L27500; (22) a Magnum Research, Inc., Desert Eagle, .44 cal., pistol, serial number DK0099777; (23) a Smith & Wesson, Bodyguard, .38 cal., revolver, serial number CVW3838; (24) a Glock, 43, 9mm, pistol, serial number AHLT557; (25) a Glock, G19M, 9mm, pistol, serial number AHVY161; (26) a Glock, 28, .380 cal, pistol, serial number AHSR021; (27) a Glock, 21, Gen4, .45 cal., pistol, serial number AGSK34; (28) a FN. (FN Herstal), Five-seven, 5.7 cal., pistol, serial number 386423404; (29) a Ruger, American Pistol, 9mm, pistol, serial number 860-98887; (30) a Glock, 34, 9mm, pistol, serial number GYF545; (31) a Glock, 48, 9mm, pistol, serial number BXCX395; (32) a German Sports Guns, Firefly, .22 cal., pistol, serial number F515955; (33) a SCCY Industries, DVG-1, 9mm, pistol, serial number D005325; (34) a Taurus, G2C, 9mm, pistol, serial number TLN51887; (35) a Ruger, Security-9, 9mm, pistol, serial number 382-00414; (36) a Mossberg, MC2C, 9mm, pistol, serial number 026699MC; (37) a Smith & Wesson, SD9, 9mm, pistol, serial number EFC5821; (38) a Canik, TP-9SF, 9mm, pistol, serial number 22AT19109; (39) a Taurus, G2C, 9mm, pistol, serial number 1C113115; (40) Canik, Mete, 9mm, pistol, serial number T6472-21CC19757; (41) a Taurus, G2C, 9mm, pistol, serial number AEB081573; (42) a Bersa, BP9CC, 9mm, pistol, serial number M46476, (43) a SAR 9, 9mm pistol, serial number T11102-21BV95039, and (44) a Colt, M1911A1, .45cal., pistol, serial number 2799591.

The defendant agrees and consents to the forfeiture of her interest in these assets pursuant

to any criminal, civil and/or administrative forfeiture action brought to forfeit these assets.

None of the forfeitures set forth in this section shall be deemed to satisfy or offset any fine, restitution, cost of imprisonment, or other penalty imposed upon the defendant, nor shall the forfeitures be used to offset the defendant's tax liability or any other debt owed by the defendant to the United States.

The defendant agrees to waive all constitutional, statutory, and any other challenges in any manner, including, without limitation, by direct appeal and/or habeas corpus, to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including the following: (1) the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the U.S. Constitution; (2) failure to comply with any and all requirements of Fed. R. Crim. P. 11(b)(1)(J) pertaining to the Court's advice at the change of plea hearing; and, (3) failure to comply with any and all requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument and announcement of the forfeiture at sentencing and incorporation of the forfeiture in the judgment. The defendant further acknowledges that she understands that the forfeiture of assets is part of the sentence that may be imposed in this case.

The defendant waives and releases any and all claims she may have to any property seized by the United States, or any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, whether forfeited or not. The defendant agrees to hold the United States, its agents, and employees, and any state or local law enforcement agency participating in the investigation and prosecution of this case, harmless from any claims whatsoever in connection with the seizure and forfeiture, as well as the seizure, detention and return of any property in connection with the investigation and prosecution of this

case.

The defendant acknowledges that the properties to be forfeited under this section are subject to forfeiture as property facilitating or involved in illegal conduct.

14. <u>Waivers</u>.

A. Appeal.

The defendant understands that she has the right to challenge her guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives her right to challenge on direct appeal:

1. Her guilty plea and any other aspect of her conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2. The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of her rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B. Collateral Review

The defendant understands that she may have the right to challenge her guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives her right to collaterally challenge:

1. Her guilty plea, except as provided below, and any other aspect of her conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.      The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of her right to collateral review does not operate to waive a collateral challenge to her guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of her right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

15.    No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

16.    Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this

Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

17.    Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

ERIN CREEGAN

United States Attorney

Date: 1/22/2026

By: _____ (Matthew T Hunter, AcsA) for
Christopher Marin
Special Assistant United States Attorney
New York Bar Association #5530068
53 Pleasant St., 4th Floor
Concord, NH 03301
Christopher.Marin@usdoj.gov

M. Yasir Sadat
Assistant United States Attorney
53 Pleasant St., 4th Floor
Concord, NH 03301
Yasir.Sadat@usdoj.gov

The defendant, Melissa Longe, certifies that she has read this 21-page Plea Agreement and that she fully understands and accepts its terms.

Date: January 20, 2026

_____
Melissa Longe, Defendant

I have read and explained this 21-page Plea Agreement to the defendant, and she has advised me that she understands and accepts its terms.

Date: 1/20/2026

_____
Robert S. Carey, Esquire

Attorney for Melissa Longe